No. 17-50357

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

——

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FERNANDO OROZCO-URANGA

Defendant-Appellant.

——

Appeal from the United States District Court
for the Southern District of California
U.S. District Judge Larry A. Burns Presiding

——

APPELLANT'S OPENING BRIEF

DAVID R. SILLDORF
Silldorf Law, LLP
1660 Hotel Circle North, Suite 701
San Diego, California 92108
Tel: (858) 625-3900

Attorney for Defendant-Appellant

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS AND CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       RE-SENTENCING IS REQUIRED BECAUSE THE
       DISTRICT COURT'S BASES FOR DENYING
       APPELLANT THE JOINTLY REQUESTED FOUR-
       LEVEL FAST-TRACK DEPARTURE WERE
       IMPROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B. The District Court Erred By Rejecting The Fast-Track
       Departure On A Basis Already Accounted For In USSG §
       2L1.2, And Because Of The Effect It Would Have Had
       On The Advisory Guideline Range . . . . . . . . . . . . . . . . . . . . . . . 10

       1.  The District Court Double Counted Appellant's
       Section 1326 Criminal History . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       2.  The District Court Also Impermissibly Denied The
       Fast-Track Departure Because Of The Effect It Would
       Have Had On The Guideline Range . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

APPENDIX (SECTION 2L1.2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

PROOF OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Berman v. United States, 302 U.S. 211 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re Morgan, 506 F.3d 705 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Alexander, 48 F.3d 1477 (9th Cir.1995) . . . . . . . . . . . . . . . . 12

United States v. Calozza, 125 F.3d 687 (9th Cir. 1997) . . . . . . . . . . . . . . . . . 12

United States v. Hornbuckle, 784 F.3d 549 (9th Cir. 2015) . . . . . . . . . . . . . . 10

United States v. Lee, 725 F.3d 1159 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . 13

United States v. Odachyan, 749 F.3d 798 (9th Cir. 2014) . . . . . . . . . . . . . . . 14

United States v. Rosales-Gonzales, 801 F.3d 1177 (9th Cir. 2015) . . . . . . . . 13

## STATUTES

8 U.S.C. § 1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,11

8 U.S.C. § 1326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4,9-12

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## U.S. SENTENCING GUIDELINE PROVISIONS

USSG § 2L1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,9-11,13

USSG app. C amend 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | USCA No.  17-50357 |
| | ) | |
| Plaintiff-Appellee, | ) | USDC No.  17CR1262-LAB |
| | ) | |
| v. | ) | |
| | ) | |
| FERNANDO OROZCO-URANGA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

## **<u>QUESTION PRESENTED FOR REVIEW</u>**

Did the district court err in denying the joint recommendation for a four-level fast-track departure in this case because: (1) a basis for its denial -- that Appellant had prior convictions for the same 8 U.S.C. § 1326 offense -- was already accounted for in the 2016 amendments to USSG § 2L1.2 which resulted in a four-level upward adjustment for Appellant's prior section 1326 record; and (2) it impermissibly factored into its analysis its belief that the departure would result in an unacceptably low advisory guideline range?

# STATEMENT OF JURISDICTION

## A.        Basis For Subject Matter Jurisdiction Below

This appeal is taken from the judgment and sentence that was imposed against Appellant, Fernando Orozco-Uranga, in the U.S. District Court for the Southern District of California. [ER 44-47].[1]  This Court has jurisdiction to review the district court's ruling pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## B.        Basis For Jurisdiction In The Court Of Appeals

This Court has jurisdiction over a timely appeal from the final order of a district court.  See 28 U.S.C. § 1291.

## C.        The Judgment Is Appealable

A judgment of conviction and sentence is a final order subject to appeal under 28 U.S.C. § 1291.  Berman v. United States, 302 U.S. 211, 212-13 (1937).

## D.        Timely Notice Of Appeal

The district court issued its Judgment and Commitment on October 13, 2017.  [ER 44-47].  Mr. Orozco-Uranga's timely notice of appeal was filed that same day.  [ER 48].

---

[1] "CR" refers to the Clerk's Record; "ER" refers to Appellant's Excerpts of Record; "PSR" refers to the pre-sentence report; "RT" refers to the Reporter's Transcript of Sentencing.

**E.      Bail Status**

Mr. Orozco-Uranga is serving a 41-month custodial sentence in the custody of the Federal Bureau of Prisons.  [ER 44].

## STATEMENTS OF FACTS AND CASE

Appellant, Mr. Orozco-Uranga, is a 62 year-old Mexican citizen.  [PSR 2].  On April 19, 2017, Appellant came to the port of entry at Calexico, California and made a claim of U.S. citizenship.  [PSR 4].  After the immigration inspector asked him for identification, Appellant produced a veterans card and a Mexican federal ID.  Id.  Because Appellant appeared to be inebriated, he was referred for a secondary inspection.  Id.  That inspection revealed that Appellant was a citizen of Mexico who had been previously deported from the United States.  Id.

The government charged Appellant by information with attempted reentry by an alien, in violation of 8 U.S.C. § 1326.  [ER 1-2].  Appellant pled guilty pursuant to a "fast-track"[2] government offer, which included the joint recommendation that the district court depart down four-level for the expedited disposition of the case.  [ER 11].

---

[2] A "fast-track" offer is the standard expedited resolution offer for cases in the Southern District of California which involve arrests at the border for smuggling or section 1326 offenses.

The pre-sentence report revealed a substantial criminal history for Appellant, much of it due to his past problems with alcohol. [PSR 6-10]. Appellant's criminal history included four prior criminal immigration convictions. Specifically, in 2000, Appellant was convicted of a section 1325 misdemeanor offense and received a sentence of 6 months in custody. [PSR 8]. In 2002, he was convicted of a section 1326 violation and received a sentence of 24 months custody. Id. In 2004, he suffered his second section 1326 conviction and received a sentence of 46 months in custody. [PSR 9]. His final section 1326 conviction occurred in 2007, for which he received a sentence of 54 months in custody. Id.

U.S. Probation found a total offense level of 16. [PSR 17]. It arrived at this level using upon a base offense level of 8, an increase of four levels because of his prior 1326 felony conviction, an increase of six levels for his prior conviction with a sentence exceeding one year and one month following his first deportation, a downward adjustment of two levels for his acceptance of responsibility, and a downward departure of four levels for the fast track disposition of the case. Id. Because Appellant was in criminal history category V, this left a resulting guideline range of 27-33 months. Id. U.S. Probation recommended a low-end sentence of 27 months to the district court. [PSR 15].

The government and defense found a resulting guideline range of 24-30 months after applying a three level reduction for acceptance of responsibility. [CR 26-27]. The government recommended a high-end sentence of 30 months custody. The defense asked for a sentence of 21 months, which included a one-level departure based on a combination of mitigating circumstances, including facts from his prior life in this country, prior military service, and the fact that this was his first conviction since 2007. [CR 27]. The district court noted its disagreement with the fast-track recommendation:

> THE COURT: All right. On behalf of the United States. I don't fully understand the fast track recommendation of four points here for a guy that's [sic] fifth immigration offense, third felony along with the others stuff in the record. I don't get it, Mr. McDonald.

[ER 34].

The government then explained why it was making this recommendation:

> MR. MCDONALD: Yes, Your Honor.
>
> Your Honor, I would have four kind of general reasons for the Court that I think makes sense of this particular case and kind of distinguishes it from, for instance, the one earlier this morning and some other ones. I did go back as Mr. Silldorf explained. I also looked back at the 2007 instance to see what happened there, did we give him fast

track at that time and I can confirm that we didn't. We didn't give him the fast track at that point.

He pled without a plea agreement and I actually have the sentencing summary chart in front of me. The guideline range there was actually to 96 months, it was quite high, and that sort of leads me to my second reason which is that the guidelines here have pretty substantially changed, particularly with respect to this defendant and his criminal history.

So for instance in 2007 he had a plus 16 from an ag felony and various other of those earlier crimes also scored and so that led to that pretty high range, which your court, Your Honor ultimately varied down I think to 54 months. The third reason here is that this defendant to his credit did stay out for what it appears to me to be about five years. He didn't come right back. Like the fellow this morning came back within about a month as I understand it. He didn't. He stayed out to his credit.

And then the fourth reason here, Your Honor, is that we did allow for ourselves, the United States, to recommend a high end recommendation, not a low end, which is often what is seen, and so here all of those reasons combined led to that, that four level fast track recommendation and which ultimately leads to a 24 to 30 month recommendation.

And we agree and recommend the high end of the 30 months and also supervised release. It did work last time, he did stay out. And so I would refer to the commentary note to the guidelines that it is a necessary added measure of deterrence in this case and so I would recommend three years of that certainly. I would also just note one final thing or the record and that is that the defense requested a one level combination of circumstances departure and I would

6

just like to confirm with the Court that the Court did consider that and it has considered that request.

[ER 34-36].

The district court then discussed the fast-track departure:

Next question becomes the recommended departures. The government has recommended four points for fast track and I think the defendant pled guilty fairly quickly in this case. The complication is this is the fifth felony, excuse me, fourth felony for the same thing and fifth immigration offense along with other offenses and I just don't think it's warranted here. The effect of this is to skew the calculus under 3553.

When the guidelines go down this low it -- to me it seems like it's at war with other valid sentencing objectives, and, you know, one can affect that by sort of cavalierly giving this fast track in every case, even where, you know, logic would say well, wait a minute, there's some competing factors here.

You know, this is a fifth time immigration offender, fourth time felon. He's committed essentially the same offense. He's gotten much longer sentences before. So by giving this fast track we put it down to where his level, even though, Mr. McDonald, you're recommending the high end, is considerably lower than what he got before.

Now I get it, the guidelines have changed. I'm not sure that the minutia of the guideline changes really affects what's important here which is deterring the defendant from doing this again. That's one of the most important factors I think in immigration cases.

This is a status offense. As Mr. Silldorf has mentioned, we don't want him to come back anymore because he's got a disqualifying record. And so one of the important objectives here is fashioning a sentence that will deter him from committing the same offense. We haven't been successful at that so far, we haven't. So I'm troubled that, you know, we're giving a fellow now on his fourth felony a four level departure for pleading guilty quickly and essentially acknowledging what is evident that he shouldn't be back here. I decline to do that. I 'm not going to give four levels on this. As I said, I think it's antagonistic to other important sentencing objectives and on that basis I reject four levels.

Now, Mr. Silldorf points out that he hasn't received the benefit of this before. He's different from many offenders where this is recommended successively who've gotten it before and I am aware that he did remain out, both sides agree, between June of 2012 and the latest offense. So I think it's probably equitable to give him some consideration here. The Court departs one level for fast track, not four, one level. Mr. Silldorf has asked me to consider combination of circumstances. I have considered that, I decline to depart on that basis. The equities are such with the guidelines changing that I think most of that has been taken into consideration already by the sentencing commission.

[ER 37-39].

The district court imposed an above-guideline sentence of 41 months, to be followed by three years of supervised release. [ER 41].

## SUMMARY OF ARGUMENT

Appellant argues in this appeal that re-sentencing is required because the district court denied the joint recommendation for a four-level fast-track departure on impermissible bases. The district court declined to apply the recommended four-level departure for the expedited disposition of this case because Appellant had four prior convictions for criminal immigration offenses, and because application of the departure would have lowered the resulting guideline range too much. Appellant's prior section 1326 record, however, had been taken into account in the advisory guideline calculations with the four-level increase under USSG § 2L1.2(b)(1)(A), resulting in a double-counting of this criminal history. Additionally, if the district court believed that the guideline range did not adequately account for the section 3553(a) factors, the proper mechanism to increase the sentence was through a section 3553(a) variance, not by failing to consider a departure request on its own merits. Because the district court denied the fast-track departure request on improper grounds, a full re-sentencing is required.

# ARGUMENT

## RE-SENTENCING IS REQUIRED BECAUSE THE DISTRICT COURT'S BASES FOR DENYING APPELLANT THE JOINTLY REQUESTED FOUR-LEVEL FAST-TRACK DEPARTURE WERE IMPROPER

### A.       Standard of Review

This Court reviews the district court's interpretation of the Sentencing Guidelines <u>de novo</u>, and the district court's factual findings for clear error.  <u>See United States v. Hornbuckle</u>, 784 F.3d 549, 553 (9th Cir. 2015).

### B.       The District Court Erred By Rejecting The Fast-Track Departure On A Basis Already Accounted For In USSG § 2L1.2, And Because Of The Effect It Would Have Had On The Advisory Guideline Range

The government recommended a four-level downward departure for the expedited disposition of this case.  This was an appropriate departure pursuant to section 5K3.1, which provides that "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."  USSG § 5K3.1.

The district court denied the four-level departure, and only departed one level, for two primary reasons: (1) because Appellant had multiple prior convictions for illegal entry offenses; and (2) because a four-level departure would provide too

significant a decrease in the guideline range. Although Appellant had not received a fast-track departure in any of his prior cases, the district court did not want to give "a fellow now on his fourth felony a four level departure for pleading guilty quickly and essentially acknowledging what is evident that he shouldn't be back here." [ER 38]. Each basis that the district court noted in its denial of the fast-track departure was improper.

### 1. The District Court Double Counted Appellant's Section 1326 Criminal History

First, the district court's approach to this departure request resulted in a double counting of Appellant's prior criminal immigration record. Not only had Appellant never received a "fast-track" departure in any of his previous cases, those cases also had been handled under the prior version of section 2L1.2 where no specific offense characteristic increase for a prior felony immigration offense applied. The Sentencing Commission added the upward adjustment for having a prior conviction for illegal reentry in response to concerns that prior convictions for illegal reentry offenses may not be adequately accounted for in the existing guideline. See USSG app. C amend 802, reason for amendment (2016); see also id., ("The Commission determined that a defendant's demonstrated history of violating 1325(a) and 1326 is appropriately accounted for in a separate

enhancement. Because defendants with second or successive 1325(a) convictions (whether they were charged as felonies or misdemeanors) have entered illegally more than once, the Commission determined that this conduct is appropriately accounted for under this enhancement.").

Here, Appellant received a four-level section USSG § 2L1.2(b)(1)(A) increase for his prior section 1326 conviction, an application which increased his total advisory guideline range by 16 months. [PSR 17]. While the overall guideline calculations ended up being more friendly to Appellant under the amended section 2L1.2, the prior section 1326 conduct that the district court relied upon to deny three levels of the fast-track departure was "on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Calozza, 125 F.3d 687, 691 (9th Cir. 1997)(quoting United States v. Alexander, 48 F.3d 1477, 1492 (9th Cir.1995)). For this reason, this basis for denying the departure was improper.

### 2. The District Court Also Impermissibly Denied The Fast-Track Departure Because Of The Effect It Would Have Had On The Guideline Range

Additionally, the district court erred by denying the fast-track departure for which Appellant had fully qualified in all aspects simply because it believed

that the result of the reduction would have been be an advisory guideline range which was too lenient. If a district court believes that a properly computed guideline range does not adequately account for the section 3553(a) factors, then the proper mechanism to increase or decrease the sentence is through a section 3553(a) variance, not by ignoring or improperly considering a departure request. See United States v. Lee, 725 F.3d 1159, 1165 (9th Cir. 2013)("[a] district court may not create a Guidelines range on a basis that it is necessary to enable the court to impose the sentence it would like to impose."). The district court here, however, put the cart before the horse in connection with its guideline calculations, [ER 37 ("When the guidelines go down this low it -- to me it seems like it's at war with other valid sentencing objectives, and, you know, one can affect that by sort of cavalierly giving this fast track in every case, even where, you know, logic would say well, wait a minute, there's some competing factors here.")], and this is something it cannot do. Lee, 725 F.3d at 1165.

This Court's decision in United States v. Rosales-Gonzales, 801 F.3d 1177, 1183-84 (9th Cir. 2015), does not change this analysis. In that case, this Court examined whether Judge Burns erred when he denied a fast-track departure in a pre-section 2L1.2 amendment case. Rosales-Gonzalez involved the parties

joint request for a four-level fast-track reduction, a request that the district court

denied because defendant had three prior felony illegal entry cases. The panel

found that Judge Burns properly denied the departure, but also cautioned:

> This is not to say, however, that a district court can simply
> ignore the fast-track departure, or other discretionary
> departures under § 5K of the Sentencing Guidelines. As we
> have previously noted in the context of accepting or
> rejecting plea agreements, "the existence of discretion
> requires its exercise, and when a court establishes a broad
> policy based on events unrelated to the individual case
> before it, no discretion has been exercised." *In re Morgan*,
> 506 F.3d 705, 712 (9th Cir. 2007) (internal quotation
> marks, alterations, citations omitted). Just as it would be an
> abuse of discretion for a district court judge to have a
> blanket policy against accepting plea agreements with
> binding sentences incorporating the fast-track departure,
> *see United States v. Gonzalez*, 502 F. App'x 665, 667 (9th
> Cir. 2012), so too would it be an abuse of discretion for a
> district court judge to implement a blanket policy against
> granting recommended fast-track departures in plea
> agreements with non-binding sentences, *cf. United States v.
> Odachyan*, 749 F.3d 798, 804-05 (9th Cir. 2014)
> (Reinhardt, J., concurring) (explaining that a district court
> judge's statement indicating the judge considered the
> defendant to be part of a group of immigrants that "prey on
> this government's institutions" was adverse to § 3553(a)'s
> requirement of an individualized determination at
> sentencing). Though counsel for Rosales-Gonzales
> contended that the district court judge here was more
> reticent than other judges to grant the fast-track departure,
> she conceded—and the record does not contradict—that the
> district court judge does not have a blanket policy of
> denying the fast-track departure.

<u>Rosales-Gonzales</u>, 801 F.3d at 1183-84.

Instead of the district court properly exercising its discretion and deciding whether this fast-track departure was warranted given the proceedings in this particular case to which it related, it ignored this required review and instead looked to the sentence it ultimately wanted to impose in addressing the propriety of this departure. Because this is not the exercise of discretion that <u>Rosales-Gonzales</u> requires, re-sentencing is required for the district court to consider the fast-track departure on its own merits, and independently of the ultimate sentence imposed.

## <u>CONCLUSION</u>

Mr. Orozco-Uranga asks this Court to vacate his sentence and remand the case to the district court for a full re-sentencing.

Respectfully Submitted,

Dated: February 9, 2018

/s/ David R. Silldorf
DAVID R. SILLDORF
Silldorf Law, LLP
1660 Hotel Circle North, Suite 701
San Diego, California 92108
Tel: (858) 625-3900

Attorney for Defendant-Appellant

15

# APPENDIX

USSG § 2L1.2. Unlawfully Entering or Remaining in the United States

(a)  Base Offense Level: 8

(b)  Specific Offense Characteristics
(1)  (Apply the Greater) If the defendant committed the instant offense after sustaining--
(A)  a conviction for a felony that is an illegal reentry offense, increase by 4 levels; or
(B)  two or more convictions for misdemeanors under 8 U.S.C. § 1325(a), increase by 2 levels.
(2)  (Apply the Greatest) If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained--
(A)  a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by 10 levels;
(B)  a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by 8 levels;
(C)  a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by 6 levels;
(D)  a conviction for any other felony offense (other than an illegal reentry offense), increase by 4 levels; or
(E)  three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 2 levels.
(3)  (Apply the Greatest) If, at any time after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct resulting in--
(A)  a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five

years or more, increase by 10 levels;

(B)  a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by 8 levels;

(C)  a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by 6 levels;

(D)  a conviction for any other felony offense (other than an illegal reentry offense), increase by 4 levels; or

(E)  three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 2 levels.

Commentary

Statutory Provisions:8 U.S.C. § 1253, § 1325(a) (second or subsequent offense only), § 1326. For additional statutory provision(s), see Appendix A (Statutory Index).

Application Notes:

1.  In General.

(A)  "Ordered Deported or Ordered Removed from the United States for the First Time". For purposes of this guideline, a defendant shall be considered "ordered deported or ordered removed from the United States" if the defendant was ordered deported or ordered removed from the United States based on a final order of exclusion, deportation, or removal, regardless of whether the order was in response to a conviction. "For the first time" refers to the first time the defendant was ever the subject of such an order.

(B)  Offenses Committed Prior to Age Eighteen. Subsections (b)(1), (b)(2), and (b)(3) do not apply to a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is classified as an adult conviction under the laws of the

jurisdiction in which the defendant was convicted.

2. Definitions. For purposes of this guideline:

"Crime of violence" means any of the following offenses under federal, state, or local law: murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c), or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

"Forcible sex offense" includes where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. The offenses of sexual abuse of a minor and statutory rape are included only if the sexual abuse of a minor or statutory rape was (A) an offense described in 18 U.S.C. § 2241(c) or (B) an offense under state law that would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States.

"Extortion" is obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury.

"Drug trafficking offense" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

"Felony" means any federal, state, or local offense punishable by imprisonment for a term exceeding one year.

"Illegal reentry offense" means (A) an offense under 8 U.S.C. § 1253 or § 1326, or (B) a second or subsequent

18

offense under 8 U.S.C. § 1325(a).

"Misdemeanor" means any federal, state, or local offense punishable by a term of imprisonment of one year or less.

"Sentence imposed" has the meaning given the term "sentence of imprisonment" in Application Note 2 and subsection (b) of § 4A1.2 (Definitions and Instructions for Computing Criminal History). The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release.

3. Criminal History Points. For purposes of applying subsections (b)(1), (b)(2), and (b)(3), use only those convictions that receive criminal history points under § 4A1.1(a), (b), or (c). In addition, for purposes of subsections (b)(1)(B), (b)(2)(E), and (b)(3)(E), use only those convictions that are counted separately under § 4A1.2(a)(2).

A conviction taken into account under subsection (b)(1), (b)(2), or (b)(3) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History).

4. Cases in Which Sentences for An Illegal Reentry Offense and Another Felony Offense were Imposed at the Same Time. There may be cases in which the sentences for an illegal reentry offense and another felony offense were imposed at the same time and treated as a single sentence for purposes of calculating the criminal history score under § 4A1.1(a), (b), and (c). In such a case, use the illegal reentry offense in determining the appropriate enhancement under subsection (b)(1), if it independently would have received criminal history points. In addition, use the prior sentence for the other felony offense in determining the appropriate enhancement under subsection (b)(3), if it independently would have received criminal history points.

5. Departure Based on Seriousness of a Prior Offense. There may be cases in which the offense level provided by an enhancement in subsection (b)(2) or (b)(3) substantially understates or overstates the seriousness of the conduct underlying the prior offense, because (A) the length of the sentence imposed does not reflect the seriousness of the prior offense; (B) the prior conviction is too remote to receive criminal history points (see § 4A1.2(e)); or (C) the time actually served was

substantially less than the length of the sentence imposed for the prior offense. In such a case, a departure may be warranted.

6.   Departure Based on Time Served in State Custody. In a case in which the defendant is located by immigration authorities while the defendant is serving time in state custody, whether pre- or post-conviction, for a state offense, the time served is not covered by an adjustment under § 5G1.3(b) and, accordingly, is not covered by a departure under § 5K2.23 (Discharged Terms of Imprisonment). See § 5G1.3(a). In such a case, the court may consider whether a departure is appropriate to reflect all or part of the time served in state custody, from the time immigration authorities locate the defendant until the service of the federal sentence commences, that the court determines will not be credited to the federal sentence by the Bureau of Prisons. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

Such a departure should be considered only in cases where the departure is not likely to increase the risk to the public from further crimes of the defendant. In determining whether such a departure is appropriate, the court should consider, among other things, (A) whether the defendant engaged in additional criminal activity after illegally reentering the United States; (B) the seriousness of any such additional criminal activity, including (1) whether the defendant used violence or credible threats of violence or possessed a firearm or other dangerous weapon (or induced another person to do so) in connection with the criminal activity, (2) whether the criminal activity resulted in death or serious bodily injury to any person, and (3) whether the defendant was an organizer, leader, manager, or supervisor of others in the criminal activity; and (C) the seriousness of the defendant's other criminal history.

7.   Departure Based on Cultural Assimilation. There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

In determining whether such a departure is appropriate, the court should consider,

among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

## CERTIFICATE OF RELATED CASES

Counsel for Mr. Orozco-Uranga is unaware of any other cases pending before the Court that raise similar issues.

Respectfully submitted,

Dated: February 9, 2018

  /s/ David R. Silldorf
DAVID R. SILLDORF
Silldorf Law, LLP
1660 Hotel Circle North, Suite 701
San Diego, California 92108
Tel: (858) 625-3900

Attorney for Defendant - Appellant

# CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Rule 32(e)(4), I certify that the Opening

Brief is

  XX  Proportionately spaced, has a typeface of 14 points
or more, and contains 3254 words,

or

\_\_ Monospaced, and has 10.5 or less characters per inch

and

\_\_ Does not exceed 40 pages (opening and answering brief) or  20
pages (reply brief)

or

  XX   Contains 3254 Words


Date: February 9, 2018          /s/ David Silldorf, Esq.      
                                 DAVID SILLDORF

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| UNITED STATES OF AMERICA, | ) | USCA No. 17-50357 |
|---|---|---|
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **PROOF OF SERVICE** |
| v. | ) | |
| | ) | |
| FERNANDO OROZCO-URANGA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

I hereby certify that on February 9, 2018, I electronically filed the foregoing document with the Clerk of the Ninth Circuit Court of Appeals by using its CM/ECF System.

I certify that all participants in the case are registered CM/ECH users and that service will be accomplished by the CM/ECF system.

/s/ David Silldorf, Esq.